AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  8:16 MJ 1428 TBM |
| CURTIS WILLIAMS, JR. | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __3/17/2016 to 6/28/2016__ in the county of __Hillsborough__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21: U.S.C. § 841(a)(1) | Possession with intent to distribute a controlled substance (crack cocaine) |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Dale Frix, Task Force Officer, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-11-16

_____
Judge's signature

City and state: Tampa, Florida            Thomas B. McCoun, III, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT WARRANT

I, Dale Frix, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and I am currently assigned to a joint task force comprised of ATF agents and detectives from the Tampa Police Department (TPD). I have been employed by the TPD since February 1995, and I have been assigned to the ATF since 2014.

2. Prior to becoming a police officer, I completed 582 hours of the Basic Law Enforcement Academy, presented by The Criminal Justice Institute (CJI) of Hillsborough Community College, which operates under the statutory authority and regulation of the Florida Department of Law Enforcement (FDLE) and Florida Criminal Justice Standards and Training Commission (CJSTC). As a member of TPD, my assignments have included Uniform Patrol, Mounted Patrol, Xray Public Housing Squad, C.O.P (Community Oriented Policing) Squad, R.O.C (Rapid Offender Control) Squad, and currently a Detective in the Violent Crime Gun Unit.

3. Since February 1995, I have received over one hundred hours of training in Narcotics Identification, Undercover Operations, Narcotics Officer Survival/Red Flags, Criminal Street Gang Identification and Interdiction, and Identification of Firearms provided by TPD/HCC (Hillsborough Community College) Education and Training Division, along with specialized classes presented by High Intensity Drug Trafficking Area (HIDTA). This training has

focused on undercover operations, drug identification, vehicle searches, hidden compartments, evidence handling, commercial vehicle narcotics smuggling, firearm identification, search warrants and officer safety. In 1998, I attended eighty hours of class related to investigative interview and case preparation/court resentation provided by HCC (Hillsborough Community College) and have since spent numerous hours in the courtroom.

4. I have participated in the arrest of approximately 1,000 persons for narcotics related offenses, violent crime, and/or firearms violations. I have authored and/or executed more than 75 search and seizure warrants related to narcotics, violent crime, and/or firearms violations. I have become familiar with electronic surveillance equipment, including video recorders, tape recorders, and covert devices, used for monitoring street level drug distribution. I have worked with different organizations, such as the ATF, the Drug Enforcement Administration (DEA), and the Federal Bureau of Investigation (FBI), for the purpose of investigating drug organizations and their activities in the Tampa area.

5. I have participated in an undercover capacity in numerous investigations focusing on controlled substance and illegal firearms. I have conducted covert surveillance of suspected narcotic distributors; interviewed numerous individuals involved in gangs and the narcotic distribution trade; participated as a member of surveillance teams; participated in the execution of numerous state and federal search and arrest warrants involving narcotics and violent offenders; and participated in the seizure of numerous firearms and

controlled dangerous substances. Through my training, education, and experience, I have become familiar with the manner in which illegal narcotics and firearms are transported, stored, and distributed, and the methods of payment for such narcotics and firearms.

6. This affidavit is made for the purpose of supplying probable cause to support a criminal complaint and arrest warrant against Brian ALLEN and Curtis WILLIAMS Jr. Because this affidavit is made for the sole purpose of providing probable cause against ALLEN and WILLIAMS, I have not included every detail of every aspect of the investigation in this affidavit. Rather, I have only set forth facts that are necessary to establish probable cause to believe that ALLEN and WILLIAMS knowingly conspired to and did in fact distribute a controlled substance (crack cocaine) in violation of 21 U.S.C. §§ 846 and 841(a)(1).

## Probable Cause

7. I am the case agent for an investigation involving ALLEN and WILLIAMS.

8. In January 2016, I was contacted by an ATF confidential informant (hereafter referred to as CI) who stated that he/she knew an individual that went by the name "Beeber" who was selling firearms and crack cocaine.

9. The CI provided me with "Beeber's" phone number, 813-285-9557, a possible address of 1406 Palifox Ave E. and advised that "Beeber's" real first name was possibly Brian.

10. I queried law enforcement databases and arose at a possible identity of "Beeber" as Brian ALLEN.

11. I obtained a photograph of ALLEN and showed it to the CI with the identifiers hidden. The CI positively identified ALLEN as the individual he/she knew as "Beeber."

### *March 25, 2016 Narcotics Purchase*

12. On March 17, 2016, I was contacted by ALLEN via text message. ALLEN offered to sell me two shotguns.

13. On March 24, 2016 at approximately 10:07 pm, ALLEN sent a text message to me that said "Both fo 5." I took that to mean he was willing to sell both shotguns in exchange for $500.

14. On March 25, 2016 at approximately 4:36 am, I sent a text message to ALLEN that advised him we would talk later about the guns. At approximately 4:48 am, ALLEN responded via text with "Wit stuff". I took that to mean that ALLEN wanted me to purchase crack cocaine, as I had done from him in the past.

15. At approximately 9:40 am, ALLEN called me but the call was not answered. I returned the call at approximately 9:41 am which was not answered by ALLEN. ALLEN then responded in a text wanting to know if I wanted to make a purchase that day. I set up the purchase of 28 grams of crack cocaine.

16. At approximately 12:55 pm, I arrived at 1503 29th Avenue, Tampa, Florida. When I arrived, I observed ALLEN exit the residence and he entered the

4

my vehicle. ALLEN advised me that we needed to drive to McBerry Street to pick up the narcotics, and we proceeded to that location.

17.     Once on McBerry Street, ALLEN exited the UC vehicle and walked up to the front porch of 1909 McBerry Street, Tampa, Florida. ALLEN placed a telephone call and a short time later a black male, later identified as WILLIAMS, exited the front door. I observed ALLEN and WILLIAMS making what appeared to be a hand to hand drug transaction. ALLEN immediately returned to my vehicle carrying a baggie. After re-entering my vehicle, ALLEN handed me a baggie that contained an off-white, hard substance. I observed Williams go back into the residence.

18.     WILLIAMS was identified by me after this meeting by querying law enforcement databases related to the physical address and vehicles observed at the location. Photographs for individuals whose name were associated with the address and vehicles observed there were pulled, and I was able to positively identify WILLIAMS by doing so.

19.     I placed the baggie on a scale which showed it to weigh approximately 28.9 grams. I gave ALLEN $1400. ALLEN exited my vehicle and returned to the front porch of 1909 McBerry Street. ALLEN again made a telephone call and WILLIAMS exited the front door of the residence. ALLEN gave WILLIAMS the money and returned to my vehicle. I again saw WILLIAMS going back into the house.

20.     The narcotics were sent to a DEA laboratory for analysis. On June 23, 2016, I received a copy of the DEA laboratory report pertaining to the

analysis of the substance. It was determined that the substance weighed approximately 26.7 grams and contained cocaine.

### June 28, 2016 Firearm and Narcotics Purchase

21. On June 26, 2016 at 11:35 pm, ALLEN sent me a text message advising that he had a "pump." Based on my training and experience, I understood this to mean that ALLEN had a shotgun for sale. I sent a text message asking about the price.

22. On June 27, 2016 at 11:08 am, ALLEN advised via text message that the shotgun was sawed off. ALLEN then sent me a picture of the shotgun. ALLEN and I agreed to a price of $500. I agreed to meet ALLEN on June 28, 2016 to purchase the firearm.

23. At approximately 11:59 am, I drove to ALLEN's residence in Tampa, Florida. I attempted to call ALLEN to inform him that I was coming over, but ALLEN did not answer. ALLEN then immediately contacted me via text message. ALLEN advised that he was not home, but wanted me to wait for him at a location near his house.

24. At approximately 12:07 pm, I received a text message from ALLEN advising me to come to his residence.

25. At approximately 12:11 pm, I observed ALLEN exiting his residence and he entered my vehicle. ALLEN was holding a folded up shirt which contained the sawed off shotgun. ALLEN gave me the firearm to inspect. The shotgun was a New England Firearm Pardner- model SB1, 20 gauge shotgun.

26. At the location, I also inquired as to whether I could purchase crack cocaine from him at that time. ALLEN agreed to sell me an amount of crack cocaine, but advised me that we needed to drive to a house on McBerry Street to pick it up.

27. At approximately 12:16pm, we arrived at 1909 McBerry St E., Tampa, Florida. I observed WILLIAMS standing in the front yard next to a lawn mower. ALLEN exited my vehicle and spoke to WILLIAMS.

28. At approximately 12:17pm, I observed WILLIAMS walk in the front door to the residence. I observed WILLIAMS exit his residence and deliver a baggie containing a white substance to ALLEN while he was standing next to my vehicle.

29. ALLEN re-entered my vehicle and handed me the same baggie that he had obtained from WILLIAMS. I placed the baggie on a digital scale which showed it to weigh approximately 28.6 grams. The contents were hard rock style pieces of off a white substance.

30. I gave ALLEN $1400 for the crack cocaine. ALLEN again exited my vehicle and I observed him taking the money to WILLIAMS.

31. Shortly thereafter, we left McBerry Street and returned to ALLEN's residence.

32. When we arrived there, I gave ALLEN $500 for the shotgun. ALLEN exited the UC vehicle and entered his residence, leaving the shotgun with me.

33. It was determined that the firearm had an overall length of less than 14 inches and a barrel length of approximately 7 inches.

34. I field tested a sample of the off white substance which tested positive for the presence of cocaine.

### III. CONCLUSION

35. Based on the above, I believe that there is probable cause to believe that ALLEN and WILLIAMS knowingly distributed a controlled substance (crack cocaine) in violation of 21 USC 841(a)(1).

FURTHER AFFIANT SAYETH NAUGHT.

_____
Dale Frix, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn and subscribed before me
This 11 day of July, 2016

_____
THOMAS B. MCCOUN, III
United States Magistrate Judge

8