UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CURTIS LEE WILLIAMS,

v.  Case No. 8:17-cv-1915-T-17AEP
 8:16-cr-359-T-17AEP

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Curtis Lee Williams, Jr.'s 28 U.S.C. § 2255 motion to vacate, set aside or correct an illegal sentence. (Doc. cv-1; cr-80). The Government responded to the motion and Williams replied to the response.

After review, the motion to vacate must be **denied.**

**PROCEDURAL HISTORY**

In August 2016, a grand jury returned an eight-count indictment charging Williams and his codefendant with drug and firearms offenses. Williams pled guilty to one count of conspiracy to distribute and possess with intent to distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(iii). The Government dismissed his remaining charges.

Williams' Presentence Investigation Report (PSR), detailed his significant criminal history. (PSR ¶¶ 39–56). Based on prior convictions for robbery and possession of cocaine with intent to distribute, the Probation Office recommended that this Court sentence Williams as a career offender under the United States Sentencing Guidelines (USSG) §4B1.1. (PSR ¶ 28). In advance of sentencing, Williams' counsel filed a sentencing memorandum and motion for downward departure and downward variance. (Doc. cr-60). Counsel pointed out

that, "Williams was within approximately ninety days of the robbery conviction not being scored at all." (*Id.* 4). Without his prior robbery conviction qualifying as a predicate, Williams would not have been a career offender.

The Government also filed a motion for downward departure in advance of Williams' sentencing. (Doc. cr-63). Williams provided information to law enforcement that helped secure his codefendant's timely guilty plea and conviction. (*Id.*). In turn, the Government submitted that he deserved a two-level reduction in his offense level.

Williams faced a total offense level of 31, criminal history category of VI, and an advisory guidelines range of 188 to 235 months imprisonment. (PSR ¶¶ 38, 58, 59, 110). At sentencing, this Court granted the Government's request for a two-level departure and granted an additional two levels for a total departure of four levels. (Doc. cr-64). The amended guidelines range, after departures, totaled 130 to 162 months. This Court sentenced Williams to 130 months imprisonment. (Docs. 64, 67).

He did not appeal from his conviction or sentence. Instead, Williams timely filed the instant 28 U.S.C. § 2255 motion alleging four grounds of ineffective assistance of counsel, all centered on his representation at sentencing.

## STATEMENT OF FACTS

Working out of the home that he shared with his wife and children, Williams supplied crack cocaine to his codefendant, Brian Allen. (Doc. cr-34 at 16–17; PSR ¶¶ 17, 87). Allen flipped the cocaine and sold it on the streets. Law enforcement completed the first of many controlled purchases from the pair on January 13, 2016. (*Id.* at 16; Doc. cr-81 at 27–29). Over the course of the next seven months, an undercover officer purchased nearly 130

grams of crack cocaine and a short-barreled shotgun. (Doc. cr-34 at 1618, PSR ¶¶ 16–23). Law enforcement found two loaded firearms, loose ammunition, and $2,800 ($300 of which was determined to be funds used during a previous controlled purchase) in Williams' master bedroom. (PSR ¶ 22).

## Burden of Proof

In general, on collateral review the petitioner bears the burden of proof and persuasion on each and every aspect of his claim, *see In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016) (collecting cases), which is "a significantly higher hurdle than would exist on direct appeal" under plain error review, *see United States v. Frady*, 456 U.S. 152, 164–66 (1982). Accordingly, if this Court "cannot tell one way or the other" whether the claim is valid, then the defendant has failed to carry his burden. *Moore*, 830 F.3d at 1273; *cf. United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 2005) (in plain error review, "the burden truly is on the defendant to show that the error actually did make a difference … Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the third prong of the plain error test, and the burden is on the defendant"). Williams cannot meet this burden.

## Timeliness

Williams' judgment of conviction became final on April 14, 2017, when the time for filing a direct appeal had passed. Therefore, he had until April 14, 2018, to file his 28 U.S.C. § 2255 motion. *See Adams v. United States*, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999) (if defendant does not pursue direct appeal, conviction becomes final when time for filing direct appeal expires). Williams timely filed his 28 U.S.C. § 2255 motion on August 11, 2017.

### Cognizability

Williams' claims are cognizable. Section 2255 authorizes an attack on a sentence on four grounds: (1) it was imposed in violation of the Constitution or laws of the United States; (2) it was imposed without jurisdiction; (3) it exceeds the maximum authorized by law; or (4) it is otherwise subject to collateral attack. 28 U.S.C. § 2255. Williams claims that his counsel was ineffective at sentencing are grounded in the Sixth Amendment and are cognizable under 28 U.S.C. § 2255. *See, e.g., Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004) (ineffective assistance claims should be decided in section 2255 proceedings).

### STANDARD OF REVIEW

To succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). When evaluating performance, this Court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.... We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*); quoting *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992)).

To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

## DISCUSSION

## CLAIM ONE: CAREER OFFENDER DESIGNATION

Williams claims counsel was ineffective for failing to challenge his career offender designation. His argument centers on his mistaken belief that his prior robbery conviction should not have qualified as a career offender predicate because of its age.

A defendant qualifies as a career offender if, among other things, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a)(3). "Prior felony convictions under section 4B1.1 are counted using the definitions and instructions for computing criminal history in section 4A1.2." *United States v. Shannon,* 449 F.3d 1146, 1148 (11th Cir. 2006) (*per curiam*); USSG § 4B1.2, comment. (n.3). A prior sentence can count towards a career offender enhancement if it resulted in "imprisonment exceeding one year and one month" and "was imposed within fifteen years of the defendant's commencement of the instant offense." U.S.S.G. § 4A1.2(e)(1). A sentence also counts if it was imposed more than 15 years before the current offense, but

the incarceration extended into the applicable 15-year period. *Id.*; *Shannon*, 449 F.3d at 1148.

A revocation of probation can impact the time period in which sentences are counted under section 4A1.2(e)(1). *Shannon*, 449 F.3d at 1148. In the case of a prior revocation, the original imprisonment term is added to any additional imprisonment term imposed upon revocation. USSG § 4A1.2(k)(1); *Shannon,* 449 F.3d at 1148. Consequently, a court "ordinarily should count a conviction that is imposed, and on which the defendant is paroled, outside the [15-year] window, when the defendant later -- within the window -- is incarcerated for breaching the conditions of his parole." *Id.* (internal quotation marks omitted).

Convicted in 1997, Williams was sentenced to serve six years imprisonment and four years probation for robbery. (PSR ¶ 43; Attachment A). He violated probation twice in 1999, served additional time, and was ultimately released from custody on April 21, 2001. The current conspiracy commenced as early as January 13, 2016 -- 14 years, 8 months, and 20 days after his release from the robbery conviction. (Doc. 16 at 16; Doc. 81 at 27; PSR ¶ 16). Williams' robbery conviction falls within the applicable 15-year window and properly counts as a career-offender predicate. *United States v. Thornton*, 522 F. App'x 854, 858 (11th Cir. 2013) (prior conviction resulting in incarceration within the 15-year window meets age-of-predicate requirement). Counsel noted the 15-year window at sentencing and reminded this Court that the robbery conviction was approximately 90 days shy of the 15-year deadline.

Accordingly, Williams cannot support his allegation that counsel was ineffective by

failing to challenge the applicability of his prior robbery conviction based on its age. *Maharaj*, 432 F.3d at 1319.

## CLAIM TWO: CRIMINAL HISTORY CALCULATION

Williams' claim that counsel was ineffective for failing to object to other convictions receiving criminal history points is equally unavailing.

A prior conviction receives criminal history points if its sentence "was imposed within ten years of the defendant's commencement of the instant offense," USSG § 4 A1.2(e)(2), or resulted in "imprisonment exceeding one year and one month" and "was imposed within fifteen years of the defendant's commencement of the instant offense," USSG § 4A1.2(e)(1). Again, if a sentence were imposed more than 15 years before the current offense, but the incarceration extended into the applicable 15-year period, the sentence counts. USSG § 4A1.2(e)(1), (k)(1).

Williams suggests his counsel was ineffective for failing to challenge the applicability of his prior 2001 and 2002 drug convictions because they fall outside of the 10-year time frame. Although Williams is correct that the convictions are more than 10 years old, his argument has a fatal flaw: both convictions meet the 15-year requirement because the sentences imposed exceeded one year and one month. *See* USSG § 4A1.2(e)(1).

In November 2001, Williams was arrested by state authorities and charged with possession of cocaine and soliciting another to commit prostitution. (PSR ¶ 45). This arrest came seven months after his release from the robbery conviction.

Ten months later, a September 2002 traffic stop resulted in an information charging Williams with possession of cocaine with intent to distribute it and a variety of traffic-based

offenses. (PSR ¶ 46). In December 2002, Williams was convicted in both cases and sentenced to 21 months imprisonment. These offenses count as separate sentences even though the sentences were imposed on the same day. USSG § 4A1.2(a)(2). He was released from custody on May 8, 2004 --11 years, 8 months, and 5 days before the commencement of the instant offense. (PSR ¶¶ 45-46; Attachments B, C to document 6). As with his first claim, Williams's allegation that counsel was ineffective by failing to object to these convictions does not meet the strict standards governing deficient performance and resulting prejudice. *Strickland,* 466 U.S. at 687. Accordingly, this claim fails.

## CLAIM THREE: SHEPARD DOCUMENTS

Next, Williams raises a challenge under *Shepard v. United States*, 544 U.S. 13 (2005). He argues that counsel was ineffective for failing to challenge prior convictions used to determine his criminal history category and qualify him as a career offender.

The Supreme Court held in *Shepard* that, to determine whether a particular conviction qualifies as a violent felony, a court is "limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16. Sentencing courts "may also rely on facts contained in a presentence investigation report (PSR), so long as those facts are undisputed." *United States v. Rosales-Bruno*, 676 F.3d 1017, 1020 (11th Cir. 2012); *see United States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009) ("For purposes of sentencing, the district court also may base its factual findings on undisputed statements found in the PS[R], because they are factual findings to which the defendant has assented.").

The issue of whether counsel performed unreasonably by not objecting to the PSR and its inclusion of Williams' prior convictions is of no moment. This is because Williams, stuck within the confines of *Strickland*, cannot prove resulting prejudice from his counsel's purportedly deficient performance. The decision not to assert such a challenge was reasonable given that Williams never disputed the fact of any of his prior convictions. *(See generally* Doc. 81.) Counsel made a strategic decision to request a downward departure. ("[W]e admit he is technically scored correctly as a career offender, … [but the] standard that's set forth in 4A1.3(b)(1), it doesn't correctly categorize Mr. Williams' criminal history.") *McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984) ("Counsel will not be deemed unconstitutionally deficient because of tactical decisions.") (citations omitted).

Moreover, *Shepard*-approved documents would have sufficed had counsel objected to the PSR as Williams suggests. (*See Attachments* A–C to document 6; *see also Gonzalez v. United States*, No. 8:07-cr-134-T-17EAJ, 2012 WL 279451, at *9–11 (M.D. Fla., Jan. 31, 2012) (rejecting claim that defense counsel was ineffective "for failing to object to ... the government's failure to produce *Shepard*-type documents" because § 2255 movant "has not shown that his sentence or guidelines calculation would have been different had his counsel done anything differently"); *United States v. Alexander*, No. 4:05-CR-034-SPM, 2007 WL 4218988, at *3 (N.D. Fla., Nov. 27, 2007) ("[W]hile ... Defendant charges that counsel was ineffective for not securing additional information beyond that stated in the PSR to advise the Court of the underlying facts of the convictions, he does not even now contest the summary of the offenses in the PSR or offer anything to refute the pertinent paragraphs.").

**CLAIM FOUR: FIREARMS ENHANCEMENT**

Williams argues in his final claim that counsel provided ineffective assistance for failing to object to the application of a two-level guidelines enhancement for a firearm. (PSR ¶ 29; USSG § 2D1.1(b)(1)).

The offense level for a drug offense is increased by two levels if "a dangerous weapon (including a firearm) was possessed." (USSG § 2D1.1(b)(1)); *United States v. Pham,* 463 F.3d 1239, 1245-46 (11th Cir. 2006). The enhancement applies when a "weapon was present, unless it is clearly improbable that the weapon was connected with the offense." (USSG § 2D1.1, comment. n.3). If the firearm were found in a place -- such as Williams's residence -- where acts in furtherance of the conspiracy took place, the enhancement is also applicable. *United States v. Cook*, 593 F. App'x. 878, 882 (11th Cir. 2014) (enhancement properly applied where the defendant possessed the firearm at his residence and also engaged in conspiratorial conversations at the residence); *see also United States v. Whitt*, 470 F. App'x. 820, 821–22 (11th Cir. 2012) (enhancement properly applied to firearm found on premises but not in the same room as drugs, even though transactions were completed outside); *United States v. Trujillo*, 146 F.3d 838, 847 (11th Cir. 1998) (concluding the firearm was present where defendant's loaded gun was found in an office adjacent to the area where the cocaine was discovered).

To support the enhancement, the government must show that "the firearm was present at the site of the charged conduct" or that "the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006). However, the firearm does not have to facilitate the distribution of drugs for the enhancement to apply. *United States v. Audain*, 254 F.3d 1286,

1289-90 (11th Cir. 2001). Once the government meets its burden, then the evidentiary burden shifts to the defendant to demonstrate that a connection between the weapon and the offense was "clearly improbable." *Stallings*, 463 F.3d at 1220 (citation omitted); *Whitt*, 470 F. App'x. at 821.

The enhancement may also apply if a co-conspirator possessed the firearm. *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005). There, the government must establish by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *Pham,* 463 F.3d at 1245 (quoting *Fields*, 408 at 1359).

The facts support Williams' receiving a two-level firearms enhancement. On June 28, 2016, Allen and the undercover officer traveled to Williams' residence where they met with Williams and exchanged $1,400 for 28 grams of crack cocaine. (PSR ¶ 20). Later that same day, Allen sold the officer a short-barreled shotgun. (*Id.*). Fifteen days later, law enforcement executed a search warrant at Williams's residence. (PSR ¶ 22). In Williams' master bedroom, officers found a loaded pistol and proceeds from previous drug transactions. (*Id.*). Narcotics transactions had previously taken place at this residence. The sale of the short-barreled shotgun, along with the firearm found in Williams' bedroom, are both "acts which were reasonably foreseeable to Williams as he and Allen were co-conspirators in this offense[.]" *(Id.)*; *Pham,* 463 F.3d at 1245; *Audain*, 254 F.3d at 1289-90.

Williams' wife, Jessica, now claims that she possessed the gun found in their home and asserts that her husband did not have access to the gun. Her affidavit does not absolve Williams, however. First, the truth of her affidavit is questionable because the ammunition was located inside an unlocked small dresser inside the master bedroom of the home they shared. (PSR ¶ 22). Second, her affidavit does not demonstrate a "clearly improbable" connection between the firearm and the offense. *Stallings*, 463 F.3d at 1220. Finally, Jessica Williams' affidavit does not address the gun sold by Williams' co-conspirator -- an act reasonably foreseeable to Williams.

Even if the Court fully credited Jessica Williams' affidavit, Williams cannot prove that he was prejudiced by his counsel's lack of objection. This is because Williams' offense level (34) was the product of his statutory maximum penalty combined with his career offender status. (PSR ¶¶ 34, 35). Williams faced the same advisory guidelines range with or without the two-level enhancement at the crux of this allegation. Consequently, there is not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Nothing in Williams' reply convinces the Court that he is entitled to § 2255 relief.

Accordingly, the Court orders:

That Williams' § 2255 motion to vacate (Doc. cv-1; cr-80) is denied. The Clerk is directed to enter judgment for the Government and to close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

The Court declines to issue a certificate of appealability because Defendant has

failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize the Defendant to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Defendant shall be required to pay the full amount of the appellate filing fee pursuant to § 1915(b)(1) and (2).

    ORDERED at Tampa, Florida, on December 8, 2017.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Curtis Williams, Jr.